**HARTFORD INSURANCE COMPANY, Plaintiff,**

v.

**The METHODIST HOSPITAL, Defendant.**

**No. 91 CV 2217.**

United States District Court, E.D. New York.

Feb. 28, 1992.

---

Rivkin, Radler, Bayh, Hart & Kremer, Uniondale, N.Y. (Edward J. Hart, Evan H. Krinick, John M. Denby, of counsel), for plaintiff.

Bower & Gardner, New York City (Barry G. Saretsky, Scott S. Greenspun, Jonathan Gardner, of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge:

This case concerns a dispute between Hartford Insurance Company ("Hartford"), a Connecticut corporation, and its insured, Methodist Hospital (the "Hospital"), with its principal place of business in New York, regarding payment in a malpractice action of a settlement exceeding the Hospital's insurance coverage. Hartford seeks a declaratory judgment that it is not liable for the excess and now moves for summary judgment. This court has jurisdiction because of diversity of citizenship. 28 U.S.C. § 1332.

## I

On June 4, 1985 Maria D'Alessio, an infant, and her mother brought suit in the Supreme Court of the State of New York, Kings County, against the Hospital for negligently treating Maria and causing her severe neurological damage.

Shortly thereafter, the Hospital notified Hartford of the D'Alessio lawsuit. The Hospital had purchased from Hartford liability insurance policies providing coverage of up to $2,250,000 for any particular claim. Hartford assigned defense counsel to the lawsuit.

At a pre-trial conference, the D'Alessios' counsel made a settlement demand of $3.25 million, $1 million in excess of the coverage. Hartford did not respond to this demand.

The D'Alessio trial began on November 8, 1990. By the close of the D'Alessios' proof at trial, Hartford still had made no response to the settlement demand. The D'Alessios' attorney stated on the record that he thought Hartford's failure to offer the policy limits was in bad faith, but he did not say how his clients would respond to such an offer.

On November 27, the final day on which evidence was presented to the jury, Hartford made a settlement offer of $450,000. The D'Alessios rejected that offer. On November 29 Hartford increased its offer to $900,000. The D'Alessios made a counter "high-low offer" in which the D'Alessios would accept $2.25 million in the event of a verdict for the Hospital and a cap of $4.5 million in the event of a verdict for the D'Alessios.

On November 30 Hartford made its own "high-low offer" with a low of $500,000 and a high of $2.25 million. The D'Alessios rejected the offer and made a counter-offer with a low of $1.8 million and a high of $4 million. Hartford rejected the offer, its counsel explaining that Hartford could not "enter into any kind of an agreement which deals in money in excess of their policy limits."

Hartford never made an offer of the policy limits and the D'Alessios' attorney never stated that his clients would accept an offer within those limits.

Later that day the jury requested that the court reporter read back the testimony regarding future costs of custodial care, therapy and rehabilitation of the infant. The parties apparently inferred from this request that the jury had already decided that the Hospital was liable and was considering the issue of damages.

Hartford then offered the D'Alessios the limits of the insurance policies. They rejected the offer.

The jury subsequently reached a verdict in favor of plaintiffs for $26 million.

On the motion to set aside the verdict, the court ordered a new trial as to damages unless the D'Alessios stipulated to reduce the jury award to $5 million. On May 14, 1991 the action was settled for $3,379,020.45.

Hartford and the Hospital each contributed to the portion of the payment exceeding the policy limit. They agreed to litigate whether Hartford had acted in bad faith by refusing earlier to settle the case within the policy limits.

To the present complaint seeking a declaratory judgment that Hartford is not liable for the amount in dispute, the Hospital interposed a counterclaim contending that Hartford is liable because in bad faith it lost an opportunity to settle the claim within the policy limits. The Hospital contends that Hartford did not respond to set-

tlement demands, engage opposing counsel in settlement discussions, or otherwise protect the Hospital's interests by an earlier attempt to settle within the policy limits.

Hartford now moves for summary judgment.

## II

Under Federal Rule of Civil Procedure 56(c), to grant summary judgment the court must be satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party has the burden of demonstrating the lack of any such issue. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The court views the record in the light most favorable to the party opposing the motion, *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), and resolves all ambiguities and draws all reasonable inferences against the moving party. *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 57 (2d Cir.1987).

■ Hartford is liable for the amount in excess of the insurance coverage if the Hospital can show that it "lost an actual opportunity to settle ... within the coverage limits ... by reason of [Hartford's] purported "bad faith"." *United States Fidelity & Guar. Co. v. Copfer*, 48 N.Y.2d 871, 873, 424 N.Y.S.2d 356, 357, 400 N.E.2d 298, 298 (1979).

■ An insurer is not liable if its decision not to settle was the result of an error of judgment or mere negligence. *Best Building Co. v. Employers' Liability Assur. Corp., Ltd.*, 247 N.Y. 451, 454–6, 160 N.E. 911 (1928); *Brennan v. Mead*, 81 A.D.2d 821, 821, 438 N.Y.S.2d 821, 823 (2d Dep't 1981), *aff'd*, 54 N.Y.2d 811, 443 N.Y.S.2d 652, 427 N.E.2d 949 (1981). The Hospital must show that Hartford acted in "gross disregard" of the Hospital's interests. *DiBlasi v. Aetna Life and Casualty Ins. Co.*, 147 A.D.2d 93, 99, 542 N.Y.S.2d 187, 191 (2d Dep't 1989).

■ Whether the D'Alessios indicated a willingness to settle for the policy limits is one way, but not the only way, to show that an actual opportunity to settle existed. *See Young v. American Casualty Co.*, 416 F.2d 906 (2d Cir.1969) (interpreting New York law to find an insurer under an affirmative duty to pursue negotiations with claimant).

The New York cases have not established that an offer by a plaintiff to settle within the policy limits is a prerequisite to liability for excess damages under New York law. The court will consider all the pertinent "multifaceted factors" in determining whether excess liability should be imposed. *Town of Poland v. Transamerica Ins. Co.*, 53 A.D.2d 140, 144, 385 N.Y.S.2d 987, 990 (4th Dep't 1976). Among such other factors are the likelihood that the insured will be subject to personal liability, *DiBlasi, supra*, 147 A.D.2d at 99, 542 N.Y.S.2d at 191, and the timing of settlement offers, *Knobloch v. Royal Globe Ins. Co.*, 38 N.Y.2d 471, 478, 381 N.Y.S.2d 433, 437, 344 N.E.2d 364, 368 (1976).

■ There is no reason to believe New York courts would differ with courts of other jurisdictions holding that the absence of a formal offer by a plaintiff to settle within the policy limits is "merely one factor to consider" when evaluating whether an insurer in bad faith lost an actual opportunity to settle within the policy limits. *Rova Farms Resort, Inc. v. Investors Ins. Co.*, 65 N.J. 474, 493, 323 A.2d 495, 505 (1974). *See also State Automobile Ins. Co. v. Rowland*, 221 Tenn. 421, 432, 427 S.W.2d 30, 34 (1968); *Cernocky v. Indemnity Ins. Co.*, 69 Ill.App.2d 196, 208–9, 216 N.E.2d 198, 205 (2d Dist.1966). *But see Commercial Union Ins. Co. v. Mission Ins. Co.*, 835 F.2d 587 (5th Cir.1988) (interpreting Louisiana law).

There is nothing inconsistent in the New York cases cited by Hartford. If an insured thwarts settlement opportunities by its own misconduct, it has no basis for a bad faith claim. *Brennan, supra*, 81 A.D.2d at 821, 438 N.Y.S.2d at 823. *United States Fidelity & Guar. Co. v. Copfer*,

48 N.Y.2d 871, 424 N.Y.S.2d 356, 400 N.E.2d 298 (1979), was a case where the insurer declined to defend, asserting there was no coverage under the policy. In the insured's later declaratory judgment action the court held that the insurer was liable under the policy, but it restricted damages to the policy limits and did not include the excess resulting from the settlement negotiated by the insurer's independent counsel. The court said that speculation that the insurer might have been able to settle within the policy limits was insufficient to support a claim for excess damages.

All of the circumstances, including the timing of Hartford's eventual offer to settle within the policy limits and the D'Alessios' rejection of this offer, may affect the evaluation of whether Hartford acted in good faith and whether an actual opportunity to settle within the policy limits was lost.

The Hospital is entitled to present all of those circumstances at trial.

Hartford's motion for summary judgment is denied.

So ordered.