■ ANNA LISI et al., Plaintiffs, v MELO NEPOLA et al., Defendants. EMPLOYERS INSURANCE COMPANY OF WAUSAU, Appellant, v HARTFORD ACCIDENT & INDEMNITY COMPANY, Respondent. — In an action to recover damages for medical malpractice, Employers Insurance Company of Wausau appeals from an order of the Supreme Court, Richmond County (Rubin, J.), dated July 3, 1980, which, *inter alia,* required it to pay the $65,000 "excess sum" of the $365,000 judgment entered in favor of the plaintiffs. Order reversed, on the law and the facts, with costs, and it is declared that Hartford Accident & Indemnity Company is obligated to pay the sum of $65,000 to the plaintiffs and Employers Insurance Company of Wausau is not responsible for the payment.

Defendant Dr. Melo Nepola (defendant) was sued for medical malpractice in the underlying action. He was insured by Employers Insurance Company of Wausau (Wausau) whose coverage was limited to $300,000. Defendant also carried excess insurance in the amount of $1,000,000 under a policy issued by Hartford Accident & Indemnity Company (Hartford). Pursuant to the terms of a stipulation of settlement entered into before Justice De Matteo on July 2, 1979 between plaintiffs and the two carriers, the action was settled for $365,000. The issue of which carrier was responsible for payment of the excess $65,000 was to be determined after a hearing. We disagree with Special Term's holding that Wausau is responsible for payment of this sum. An excess insurance carrier may recover excess sums from the primary carrier if the evidence sustains a finding that the primary carrier breached its implied obligation to manage the insured's defense in good faith by failing to bring about a settlement within the policy limits. *(St. Paul Fire & Mar. Ins. Co. v United States Fid. & Guar. Co.,* 43 NY2d 977.) The record, however, does not reveal any bad faith by Wausau. Mr. Begos, as attorney for the defendant and Wausau, attempted to obtain the lowest possible settlement figure at the proceedings before Justice De Matteo on May 1 and 2, 1978, while the Hartford representatives merely stood by and informed the court that Hartford had no standing in the matter. On May 2, 1978 Wausau entered into a settlement agreement, without Hartford's consent. Hartford had previously indicated that it wished to go to trial. After this first settlement was vacated, Hartford turned around and entered into a second stipulation of settlement (dated July 2, 1979) settling the case for the very same $365,000 figure initially worked out by the plaintiffs and Wausau. Thus, we do not see "bad faith" by Wausau which would render it liable for the excess $65,000 under the rule of *St. Paul Fire & Mar. Ins. Co. v United States Fid. & Guar. Co. (supra)*. Hartford argues that on May 2, 1978 the defendant was assured by Wausau that if he consented to the entry of judgment, he would not be liable for any part of the judgment. Hartford then points to a paragraph in the excess policy which states that Hartford "will indemnify the insured for ultimate net loss which the insured becomes legally obligated to pay in excess of the applicable underlying (or retained) limit". Hartford thus concludes that as the insured could not be held liable under the terms of the stipulation, Hartford should not have to indemnify the insured. However, as the May 2, 1978 settlement and subsequent entry of judgment have been vacated, the initial settlement terms which Hartford did not make itself a party to do not survive the vacatur and cannot now be relied on by Hartford. In any event, the vacating of the May, 1978 stipulation meant that plaintiffs were free to reinstitute suit and obtain judgment against defendant. Defendant might have been able to turn around and try to seek indemnification against Wausau, but defendant would still have been liable as the tortfeasor. Thus, the doctor would still have been legally obligated to pay the judgment within the meaning of the contract terms quoted above. Hartford points to another contract provision which states that liability under the excess insurance policy shall not attach "until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant, and the company." Hartford asserts that as it never consented to liability to plaintiffs, it should not be held liable now. While it is true that Hartford did not consent to the May 2, 1978 stipulation, it did enter into the July 2, 1979 stipulation with plaintiffs and Wausau agreeing that there would be no trial and that plaintiffs were entitled to $365,000. Hartford's interpretation of this stipulation is a curious one, as on the one hand the carrier is agreeing that plaintiffs are entitled to $365,000 and thus that there shall be no trial, while, on the other hand, the carrier contends that they should not have

to pay the excess $65,000 because they never agreed to a settlement. We must disagree with the second part of this contention. As Hartford agreed on July 2, 1979 to the $365,000 figure, and as Hartford's policy obligated it to pay any moneys over and above $300,000, it is liable for the excess sum since there is no finding of bad faith on the part of Wausau. Damiani, J.P., Gulotta, Margett and Bracken, JJ., concur.